WILLIAM HERNÁNDEZ ORTEGA, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE ARECIBO, HON. HERMINIO MIRANDA, JUEZ, demandado.

*Número:* O-74-114        *Resuelto:* 11 de noviembre de 1974

*Pedro A. Otero Fernández* y *William Fred Santiago,* abogados del peticionario; *Myriam Naveira de Rodón, Procuradora General, Peter Ortiz, Procurador General Interino,* y *Américo Serra, Procurador General Auxiliar,* abogados del demandado.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

Se denunció al peticionario por el delito de Asesinato en primer grado e infracciones a la Ley de Armas. Durante la vista preliminar se planteó la incapacidad mental del peticionario para enfrentarse a proceso. De acuerdo con lo dispuesto en la Regla 240 (d), el juez suspendió la vista y ordenó el traslado del expediente al Tribunal Superior. Celebrados los procedimientos correspondientes se resolvió que el apelante estaba incapacitado mentalmente y se le sometió a tratamiento.

Varios meses más tarde se celebró otra vista para precisar la condición emocional del recurrente. Esta vez se le halló debidamente capacitado y en consecuencia se devolvieron los autos al Tribunal de Distrito para la celebración de la vista preliminar. Llegado su turno, la defensa presentó prueba pericial con el propósito de plantear la defensa de locura del peticionario al momento de la comisión de los delitos. El Juez de Distrito manifestó que le daba entero crédito al testimonio del perito psiquiatra, y así lo admite el Ministerio Público, pero determinó la existencia de causa probable. Radicadas entonces las acusaciones correspondientes en el Tribunal Superior, el peticionario solicitó su desestimación por considerar que su defensa de locura había quedado debidamente establecida y anulaba la determinación de causa probable. Se declaró sin lugar dicha moción, así como otra en reconsideración de tal fallo y el peticionario recurre ante nos por vía de *certiorari* para revisar las referidas resoluciones del Tribunal Superior.

La controversia planteada es novel en esta jurisdicción. La cuestión a dilucidarse, por supuesto, es si la defensa afirmativa de locura es promovible en la vista preliminar.

La Regla 23 de las de Procedimiento Criminal nuestra expresa, con referencia a toda persona a quien se le impute un delito grave, que "La persona podrá contrainterrogar los testigos en su contra y ofrecer prueba en su favor. . . ."

La frase deriva básicamente de la Regla 5 (c) de las Reglas Federales de Procedimiento Criminal, aunque la totalidad de nuestra Regla 23 entronca también con disposiciones de nuestro Código de Enjuiciamiento Criminal de 1935, del de California y del Código Modelo. Véase la nota sobre procedencia en 34 L.P.R.A. Ap. II, R. 23.

Existen divergencias de criterio sobre las funciones que descarga la vista preliminar. Varios comentaristas estiman que la defensa afirmativa de locura no es dilucidable en la vista preliminar. Así lo considera Moore, por ejemplo, quien opina que la defensa afirmativa de coartada puede interponerse en la vista preliminar, pero no la de locura. 8 Moore's *Federal Practice, Rules of Criminal Procedure*, 2ª. ed., sec. 5.1.02 [3], pág. 5.1-12. Véase, además, 1 Orfield, *Criminal Procedure under the Federal Rules*, 1966, sec. 5.30. No hemos localizado casos federales que así lo sostengan. Se cita a menudo a *Charlton* v. *Kelly*, 229 U.S. 449 (1913), sobre el particular, pero éste es un caso de extradición donde, por lo contrario, se afirma, para distinguir dicha situación de otras, que "si se ofreciese demostrar locura al tiempo de la comisión del crimen, ésta es obviamente una defensa que debe ventilarse al momento del juicio o en una vista preliminar en la jurisdicción del crimen, si así se provee en sus leyes." (Traducción nuestra, a la pág. 462.)

Del otro lado, en *Jennings* v. *Superior Court of Contra Costa County*, 428 P.2d 304, 313 (Cal. 1967), decidido en el estado de donde provino directamente nuestro Código de Enjuiciamiento Criminal, se resolvió que las defensas afirmativas, sin distinguir entre ellas, aunque la defensa allí envuelta era la de engaño, son planteables en la vista preliminar. Véase: *Jones* v. *Superior Court*, 483 P.2d 1241 (Cal. 1971).

Algunos estados, como Mississippi, han legislado expresamente para asegurarse que tal sea el resultado. 2A Miss. Code 1942 Anno., Recompiled 1956, sec. 2573; véase, además, Weihofen, *Mental Disorder as a Criminal Defense*, Dennis & Co., Buffalo, 1954, págs. 436 *et seq.* y 353 *et seq.* Contrario también a la norma usual en Estados Unidos de que asuntos relativos a las defensas planteables no se consideran por el gran jurado, diversos estados han aprobado legislación para derogar esta antigua pauta. Lindman y McIntyre, Jr., ed., *The Mentally Disabled and the Law*, The Univ. of Chicago Press, 1961, págs. 347 *et seq.*

La vista preliminar no se conoció en Puerto Rico hasta 1963. *Pueblo* v. *Sánchez Vega*, 97 D.P.R. 133 (1969); *Rivera Escuté* v. *Delgado*, 80 D.P.R. 830 (1958). Estaba establecido antes de ello que podía levantarse la defensa al momento de negarse la acusación, *Pueblo* v. *Cruz*, 84 D.P.R. 451 (1962), pero el problema que nos ocupa no llega a ser objeto de discusión expresa. Nos enfrentamos en distintas ocasiones a problemas periféricos, *Molina* v. *Jefe Penitenciaría*, 96 D.P.R. 191, 202 (1968); *Martínez Cortés* v. *Tribunal Superior*, 98 D.P.R. 652 (1970), mas no a la cuestión precisa ante nos.

En *Pueblo* v. *López Camacho*, 98 D.P.R. 700, 702 (1970) afirmamos que "El propósito evidente de la vista preliminar es evitar que se someta a un ciudadano en forma arbitraria e injustificada a los rigores de un proceso criminal." Esta expresión, que entronca con *Jennings*, representa una concepción más amplia de la vista preliminar que la tradicional descrita por Moore. No convierte la vista preliminar en un minijuicio, pero sí evita que en situaciones como la de autos se procese a un enajenado mental a la fecha de los hechos por la comisión de un delito por el cual no es, por definición, responsable.

La teoría tradicional de la vista preliminar está hoy bajo intenso ataque. Graham y Letwin, *The Preliminary Hearing in Los Angeles: Some Field Findings and Legal-Policy Observations*, 18 U.C.L.A. L. Rev. 635–757 (1971); Note, *The*

*Preliminary Hearing—An Interest Analysis,* 51 Iowa L. Rev. 164 (1965) ; Lewin, *Incompetency to Stand Trial: Legal and Ethical Aspects of an Abused Doctrine,* 1969 Law & Soc. Order 233. Wright—*Federal Practice and Procedure,* Vol. 1, Sec. 80—has explicado en parte la ambigüedad en la frase citada de la Regla 5(c), así como, indirectamente, la visión restrictiva aún prevaleciente en varias jurisdicciones de la vista preliminar, al señalar que los comisionados federales a cargo de las determinaciones de causa probable, aunque generalmente eficientes, no tenían que ser necesariamente abogados, por lo que existía una resistencia natural a dedicarlos a resolver cuestiones de naturaleza sutil. No se dan estas circunstancias en el caso de Puerto Rico y no existe razón en nuestro ordenamiento jurídico para prohibir judicialmente el planteamiento de la defensa de locura en ocasión de la vista preliminar. El Ministerio Público tendrá en tales casos, por supuesto, el beneficio de lo dispuesto en la Regla 74 de las de Procedimiento Criminal. Queda incólume también el principio de que es suficiente en esta etapa de los procedimientos que el juez determine la existencia o no de causa probable. El juez no tiene que adjudicar finalmente si la defensa afirmativa prevalecerá o no eventualmente, fuera de toda duda, en la vista en su fondo de estos casos. Su función es estrictamente aquilatar la razonabilidad de exponer a una persona a quien se le imputa un delito a los rigores de un juicio criminal.

*Se revocará en consecuencia la resolución objeto de la actual petición de certiorari. Esta determinación no afecta, por supuesto, los poderes del Estado para juzgar la capacidad mental actual del apelante y, de ser ello necesario, disponer su custodia bajo 1 L.P.R.A. sec. 1(3), 24 L.P.R.A. secs. 141 et seq., la Regla 241 de las de Procedimiento Criminal o bajo cualquier otra disposición aplicable de ley.*

El Juez Asociado, Señor Jorge Díaz Cruz, concurre en opinión separada.

—0—

San Juan, Puerto Rico, a 11 de noviembre de 1974
Opinión concurrente del Juez Asociado Señor Díaz Cruz

El acusado de asesinato e infracción a la Ley de Armas al comparecer a la vista preliminar ordenada por la R.P.C. 23 probó con evidencia pericial médica que era un enajenado mental cuando cometió el acto delictuoso. Como el fiscal no produjera prueba en contrario, la defensa hasta sugirió la continuación de la vista para oír unos siquiatras del Estado que podían dar testimonio corroborante sobre la incapacidad del imputado. El juez consideró innecesario escuchar más peritaje y expresó hallarse convencido de que el acusado estaba loco al realizar los hechos, pero determinó causa probable para acusar por entender que el procedimiento criminal no le permite conocer de y adjudicar la defensa de locura en la etapa de vista preliminar. Llamado el caso para vista en el Tribunal Superior, impugnó el apelante la determinación de causa fundándose en que el juez de distrito que actuó en la vista preliminar debió adjudicar una incuestionable defensa de locura, pero su planteamiento fue rechazado. Recurre en *certiorari.*

Dispone la Regla 23 (c) de Procedimiento Criminal:

"Si la persona compareciere a la vista preliminar y no renunciare a ella, el magistrado deberá oir la prueba. La vista será privada a menos que al comenzar la misma la persona solicitare que fuere pública. La persona podrá contrainterrogar los testigos en su contra y ofrecer prueba en su favor. El fiscal podrá estar presente en la vista y podrá también interrogar y contrainterrogar a todos los testigos y ofrecer otra prueba. Si a juicio del magistrado la prueba demostrare que existe causa probable para creer que se ha cometido un delito y que la persona lo cometió, el magistrado detendrá inmediatamente a la persona para que responda por la comisión de un delito ante la sección y sala correspondiente del Tribunal de Primera Instan-

cia; de lo contrario exonerará a la persona y ordenará que sea puesta en libertad."

El primero y más valioso recurso de interpretación de la Ley es la lectura de su texto que nos brinda un significado fresco e intocado por la glosa de comentaristas y escritores de revistas. Se recurre a éstos en mayor o menor medida cuando nos tropezamos con zonas crepusculares y aun así cuando las expresiones de dichos comentaristas se emiten en torno a un estado de derecho al menos similar al nuestro.

No hay claroscuros en la Regla 23 (c) de Procedimiento Criminal. Su lenguaje no deja duda de que el juez que preside la vista preliminar "exonerará a la persona y ordenará que sea puesta en libertad" si creyere que no se ha cometido delito. El juez en este caso exteriorizó su creencia de modo definitivo al decir que no tenía dudas de la enajenación del imputado, conclusión que necesariamente desemboca en que ningún delito se había cometido pues los locos no son sujetos de derecho penal (art. 39 (4) del Código Penal—33 L.P.R.A. sec. 85 (4)).

La vista preliminar no tiene como única utilidad librar a una persona de acusación evidentemente falsa, fraudulenta y sin base en ley. En adición a ésta su principal función, es un mecanismo que sirve el propósito de impedir que acusaciones frívolas e insustanciales recarguen la labor del Tribunal Superior consumiendo el tiempo de los jueces, fiscales, jurados y demás funcionarios que han de intervenir en el juicio. *Jennings* v. *Superior Court*, (1967), 428 P.2d 304, 312; 59 Cal. Rptr. 440; *Jones v. Superior Court*, (1971), 483 P.2d 1241, 1245, 94 Cal. Rptr. 289. Dicha vista, por tanto, no es una mera formalidad, sino un acto judicial de contornos definidos en el curso procesal, de incuestionable transcendencia pues el resultado habrá de reflejarse en la libertad del procesado. Excluir de la vista preliminar la defensa de locura es una manera de legislar, de imponer una excepción que no insertó la Asamblea Legislativa al aprobar la Regla 23. La vista preliminar arribó a nuestro sistema de enjuiciamiento

como parte de una corriente fortalecedora del derecho a la libertad y depuración del método acusatorio. Se cumple su razón de ser propiciando su alcance dentro de aquellos propósitos originales.

Hemos de deducir que ésta fue la posición adoptada por nuestra Asamblea Legislativa en el Código Penal de 1974 cuando en su Art. 30 (33 L.P.R.A. sec. 3152) dispuso: "No es imputable el que en el momento del hecho, a causa de enfermedad o defecto mental, careciere de capacidad suficiente para comprender la criminalidad del acto o para conducirse de acuerdo con el mandato de ley." Al así legislar la Asamblea Legislativa necesariamente estuvo informada del estado de derecho procesal configurado en la R.P.C. 23. La imputabilidad[1] es la cuestión central dominante en la vista preliminar. ¿No es precisamente la vista preliminar el primer acto judicial donde se decide la imputabilidad en casos graves? Concurre el Prof. Wright al expresar que "al hacer su determinación el magistrado se encuentra entre las partes no como interesado, sino como juez. En su objetivo y función, dicha vista es *judicial*. Así debe ser la esencia de su procedimiento." Wright, *Federal Practice and Procedure*, To. 1, pág. 141, ed. 1969. La vista preliminar no debe ser recortada en su básica función de proteger la libertad del que es falsa e indebidamente acusado.[2] El hecho de que la R.P.C. 240(d) guarde silencio sobre el procedimiento a seguir sobre la defensa de locura en nada

---

[1] Imputabilidad es la genérica aptitud para responder penalmente del hecho propio. Requiere como elemento esencial que el sujeto posea ciertas condiciones de salud que integren el armónico equilibrio de la mente. Sin imputabilidad no es posible hablar de conducta ilícita (fundamento de la pena) sino de conducta peligrosa (presupuesto de las medidas de seguridad). Los actos realizados por inimputables podrán constituir hechos jurídicos, pero no ilícitos penales. *Miró Cardona*, Proyecto de Código Penal, Rev. Jur. U.P.R., Vol. 41, Núms. 3–4, págs. 424, 427 (1972).

[2] Una indeseable consecuencia práctica de no admitir la defensa de enajenación en la vista preliminar es la conculcación del derecho constitucional del procesado a prestar fianza. No ha de ser fácil obtener fianza provisional para un loco.

disminuye la función judicial de la vista. Se hubiese incurrido en una repetición innecesaria y particularizada, porque ya la R.P.C. 23(c) ordena con claridad que cuando a juicio del magistrado no se ha cometido delito éste "exonerará a la persona y ordenará que sea puesta en libertad." El silencio de la R.P.C. 240(d) no es más que la abstención de repetir; no es silencio que conmina, ni tabú paralizante. Tanto Moore como Orfield[3] al expresar dudas sobre la procedencia de la defensa de locura en la vista preliminar, carecen de fuerza de convicción y valor persuasivo. Moore sí admite la de coartada y Orfield plantea la interrogante y se la contesta citando un caso de extradición de 1912 y añade el absurdo de que tampoco ha de considerarse una alegación de exposición anterior (*former jeopardy*) basándose en un caso de Virginia de 1807. Su doctrina en esta materia es dolorosamente rancia, indigna de seguirse en nuestra patria donde por acción legislativa e interpretación judicial hemos puesto en marcha una vasta liberalización del procedimiento criminal encaminada hacia el más amplio, efectivo y rápido acceso de la verdad a los centros de decisión judicial especialmente cuando de la libertad se trata. Los eminentes autores no parecen estar familiarizados con nuestro notable desarrollo en el campo del derecho procesal ni con la acción de nuestra Asamblea Legislativa en el Art. 30 del Código Penal de 1974 reconociendo la defensa de enajenación en la misma primera etapa del curso procesal y destacando expresamente el orden de su planteamiento al sustituir el concepto de "incapacidad" por el de "inimputabilidad." No debe descartarse como factor de retraso en el concepto de vista preliminar visualizado por Moore y Orfield la circunstancia presente en numerosas jurisdicciones de los Estados Unidos de ser un comisionado, no necesariamente abogado, quien actuaba como magistrado en la vista, situación

---

[3] Moore's *Federal Practice, Rules of Criminal Procedure*, Tomo 8, 2a. ed., sec. 5.102[3], pág. 5.1-12; Orfield, *Criminal Procedure under the Federal Rules*, 1966, Tomo 1, sec. 5.30.

que hemos superado en Puerto Rico donde la vista preliminar es presidida por un juez de distrito y en segunda instancia por un juez superior. *Wright, opus cit.*, sec. 80, pág. 134.

La vista preliminar instituida por la Regla 23 de Procedimiento Criminal es umbral del debido proceso de ley y el claro lenguaje, reclamo del vigor y alcance que para ella propuso el legislador, la configura abierta para oír y resolver sobre cualquier defensa que promueva el acusado, sin que ello afecte el principio regidor de que el grado de prueba exigido para determinación de causa es de estandar mínimo y no aquél necesario para sostener una convicción.

No se abandona el principio de que bastará para determinación de causa la prueba que incline al juez hacia la creencia en la probabilidad de que se ha cometido un delito, por ser dicha prueba de tal grado, que aun cuando insuficiente para superar la presunción de inocencia señala hacia la conveniencia de amplia dilucidación en juicio de la cuestión mayor de inocencia o culpabilidad que interesa tanto al Estado como al individuo.

La resolución revisada sosteniendo la determinación de causa probable para acusar debería anularse, mas considerando el historial de enajenación del peticionario remitirse el caso al tribunal de instancia para procedimientos adecuados y consistentes con la protección de la sociedad.