EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Olga I. Félix Taveras<br><br>Recurrida<br><br>vs.<br><br>Las Haciendas, S.E.; Ten General Contractors, S.E.; Guirimar Construction, Corp.<br><br>Peticionaria la primera | Certiorari<br><br>2005 TSPR 146<br><br>165 DPR \_\_\_\_ |

Número del Caso: CC-2004-1019
          Cons. CC-2004-1097

Fecha: 19 de octubre de 2005

Tribunal de Circuito de Apelaciones:

                    Circuito Regional VI-Caguas/Humacao/Guayama

Juez Ponente:

                    Hon. Andrés Salas Soler

Abogado de la Parte Recurrida:

                    Lcdo. Juan E. Nater Santana

Abogados de la Parte Peticionaria:

                    Lcda. Luz Ivette Rivera
                    Lcdo. Juan E. Pérez Fernández
                    Lcda. Manuel A. Moreda

Materia: Defectos de Construcción

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Olga I. Félix Taveras

    Recurrida

      vs.                   CC-2004-1019      CERTIORARI

Las Haciendas, S.E.; Ten       Cons. CC-2004-1097
General Contractors, S.E.;
Guirimar Construction, Corp.

    Peticionaria la
    primera


OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 19 de octubre de 2005


En enero de 1998, Olga Irene Félix Taveras presentó una querella ante el Departamento de Asuntos del Consumidor, en adelante DACO, contra Las Haciendas, S.E.; Ten General Contractors, S.E.; y Guirimar Construction, Corp. En la referida querella se solicitaron daños por alegados vicios de construcción y angustias mentales, sufridos luego de la adquisición, mediante compraventa, de una propiedad a Las Haciendas, S.E. y construida por Ten General Contractors en la Urbanización Villas de

Cambalache I, en Río Grande.[1] La querellante alegó que Guirimar Construction Corp., quien construyó las calles de dicha Urbanización, se apartó de lo establecido en los planos de construcción inscritos en la Administración de Reglamentos y Permisos, en adelante ARPE, y aprobados por ésta, al desviar una de las calles de la Urbanización. Argumentó que dicho acto causó que el solar donde ubica su casa quedara con especificaciones distintas a las que constaban en los planos inscritos en ARPE; que además, tuvo el efecto de disminuir el tamaño del solar, tanto en los patios traseros como en el cuarto master; y que ocasionó que la estructura quedara a una distancia menor de la permitida de la acera a su casa.[2]

La querellante, además, sostuvo que su propiedad adolecía de vicios de construcción, tales como filtraciones en el techo, una bañera descascarada, un botiquín descascarado, defectos en la terminación del piso de la marquesina, y un cambio del cascajo por "top soil" en los patios. Arguyó que dichos defectos fueron ocasionados por Ten General Contractors, S.E. Así las cosas, el DACO señaló el caso para celebración de vista evidenciaria. Dichas vistas se iniciaron con el testimonio de la querellante y

---

[1] La suma total solicitada fue de $75,875. Posteriormente, la querella fue enmendada a los fines de solicitar compensación por el daño que la humedad y las filtraciones le ocasionaron a la ropa de la querellante, cuyo valor estimó en unos $3,000 adicionales

[2] La querellante sostuvo que dicha desviación ocasionó una pérdida del 40% del valor real de la propiedad.

un agrimensor, quien testificó que las medidas del solar de la querellante no cumplían con los requisitos de patio que establece el Reglamento de Planificación de ARPE.[3]

Posteriormente, la querellante compareció ante el DACO, mediante moción, en la cual informó que su querella constaba de dos causas de acción. La primera, contra Las Haciendas S.E. y Guirimar Construction, por el incumplimiento con el reglamento de ARPE, al establecer una colindancia a una distancia menor que la permitida de la acera a la casa de la querellante; y la segunda, contra Ten General Contractors y Las Haciendas, S.E., por defectos de construcción. En la referida moción informó, además, que dichos defectos de construcción habían sido corregidos por Ten General Contractors, por lo cual la querellante desistía con perjuicio de la querella en contra de Ten General Contractors, S.E.[4] De esta forma, sólo quedó ante la consideración del organismo administrativo los alegados incumplimientos de Las Haciendas y Guirimar Construction con el Reglamento de ARPE.

---

[3] Surge del expediente que alrededor de la misma fecha en que se presentó la querella ante DACO, la querellante también presentó una querella ante ARPE por las alegadas violaciones al Reglamento de esta agencia. La referida agencia realizó una investigación sobre el asunto, luego del cual orientó a la querellante a seguir su reclamación contra el contratista de la obra y procedió a archivar la querella el 4 de marzo de 1998.

[4] La querellante y Ten General Contractors suscribieron un acuerdo transaccional en el que la primera desistía con perjuicio de toda ulterior reclamación contra la segunda con motivo de la adquisición de la unidad de vivienda en la Urb. Villas de Cambalache.

El DACO continuó la celebración de las vistas, en las cuales la querellante culminó su presentación de la prueba. Llegado el turno de presentación de la prueba de las querelladas, Guirimar Construction presentó una moción de insuficiencia de la prueba al amparo de la Regla 39.2(c) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III.[5] La referida moción no fue resuelta por el DACO. En vista de ello, Guirimar Construction presentó una nueva moción de desestimación. En la segunda moción, argumentó, que por ser el asunto de la colindancia y de las alegadas violaciones a los planos, de la exclusiva jurisdicción de ARPE, el DACO carecía de la misma para entender en el asunto.

Acogiendo la moción de desestimación presentada por la querellada, el DACO emitió resolución ordenando el cierre y archivo de la querella. En la misma, exhortó a Félix Taveras a acudir a ARPE, para que dicho organismo interpretara, conforme a su Reglamento, las alegadas violaciones a las colindancias del solar.

Inconforme, Félix Taveras presentó una moción de reconsideración ante la agencia. En la misma argumentó que debido a que se trataba de una reclamación donde se encontraba un consumidor envuelto, con interés en que su caso fuese resuelto ante el Departamento, tanto la Ley Núm. 5 del 23 de abril de 1973, como la Ley Núm. 130 del 13 de junio de 1967, le concedían jurisdicción al DACO bajo la

---

[5] Es menester enfatizar que la referida Regla establece que, en caso de que la moción sea declarada sin lugar, el demandado no renuncia a su derecho de ofrecer prueba.

doctrina de jurisdicción primaria. Acogiendo los referidos planteamientos, el DACO emitió resolución declarando con lugar la moción de reconsideración presentada por la querellante y dejando sin efecto la resolución previamente emitida en la que se ordenaba el cierre y archivo de la querella.

Inconforme con esta nueva determinación, el 16 de octubre de 2001, Las Haciendas S.E. acudió ante el Tribunal de Apelaciones, mediante recurso de mandamus, solicitando se ordenara al juez administrativo del DACO a que tomase en consideración los planteamientos hechos ante el DACO sobre la alegada falta de jurisdicción del foro administrativo y que se le ordenara a dicho funcionario a archivar la querella presentada por Félix Taveras.

El tribunal apelativo intermedio denegó el recurso de mandamus solicitado por la querellada, Las Haciendas, S.E. En la resolución que a esos efectos emitiera señaló que el remedio solicitado no era el adecuado y que no le correspondía entrar, en ese momento, en los méritos de las controversias ni pasar juicio sobre la procedencia de alguna solicitud al foro administrativo sobre la desestimación del caso.

Las Haciendas S.E., solicitó la reconsideración de la determinación anterior. El 6 de noviembre de 2001, el foro apelativo intermedio, mediante resolución, se negó a reconsiderar su decisión. Ello no obstante, en esta resolución expresó que no podía perderse de vista que el

único asunto que permitía la clara jurisdicción de DACO
--los alegados defectos de construcción-- había sido
desistido el 26 de octubre de 2001 y que lo relacionado a
los reclamos sobre cabida, distancias y "plot plans"
aparentaba estar bajo investigación ante ARPE, "que sin
lugar a dudas era la agencia con jurisdicción para ese
asunto".[6] A continuación, el foro apelativo intermedio
señaló que, estando pendiente todo asunto ante el foro
administrativo (refiriéndose al DACO), por haberse dejado
sin efecto la desestimación de la querella, lo prudente era
que luego de plasmarse la decisión final del mismo la parte
afectada por dicha decisión final acudiese oportunamente en
revisión de la misma.

El caso siguió su curso administrativo. Luego de
varios incidentes y trámites procesales, Las Haciendas S.E.
y Guirimar Construction presentaron ante el DACO una nueva
moción de desestimación. En la misma alegaron que, en
virtud de la resolución del foro apelativo intermedio del 6
de noviembre de 2001, el asunto relacionado a la alegada
violación del Reglamento de ARPE era de la exclusiva
jurisdicción de ese organismo, y, toda vez que éste era el
único asunto pendiente aun ante el DACO, dicho organismo
administrativo carecía de jurisdicción.

El DACO emitió resolución interlocutoria declarando
sin lugar la moción de desestimación. Señaló que mediante

---

[6] Evidentemente, el foro apelativo no se percató que la
querella ante ARPE había sido archivada desde el 4 de marzo
de 1998.

la misma se reincorporaba a Ten General Contractors a los procedimientos, a solicitud de la querellante, ya que los defectos de la propiedad habían vuelto a surgir. De esta determinación, Las Haciendas, Guirimar Construction y Ten General Contractors solicitaron la reconsideración, a lo cual se opuso la querellante, Félix Taveras.[7]

Finalmente, el 4 de mayo de 2004, el DACO emitió una resolución sumaria. En la misma resolvió, acogiendo los planteamientos esbozados en la moción de reconsideración presentada por las querelladas, que la agencia con jurisdicción en cuanto a las reclamaciones contra Las Haciendas y Guirimar Construction lo era ARPE. En cuanto a Ten General Contractors resolvió que en vista de que surgía del expediente administrativo que la querellante había desistido con perjuicio de su querella, este hecho impedía atender nuevamente dichos reclamos. En vista de ello, DACO ordenó el cierre y archivo de la querella contra todas las querelladas.[8]

Inconforme con esta determinación, la querellante acudió, vía recurso de revisión administrativa, ante el Tribunal de Apelaciones. En el referido recurso, alegó, en

---

[7] En particular, Ten General alegó que en virtud del acuerdo transaccional suscrito por esta y la querellante, esta última se encontraba impedida de instar nueva reclamación.

[8] Vale la pena enfatizar que, al momento de emitir esta última determinación, las querelladas no habían presentado su prueba para refutar la presentada por la querellante. Ello por razón de que, luego de culminada la presentación de la prueba de Félix Taveras, el DACO había procedido a desestimar la querella en virtud de los planteamientos de falta de jurisdicción que hiciera Guirimar Construction.

síntesis y en lo pertinente, que era errónea la determinación de la agencia ya que DACO sí tenía jurisdicción sobre la querella presentada porque la misma trataba de una práctica indeseable en el negocio de la construcción. Alegó, además, que toda vez que los vicios de construcción habían vuelto a surgir, no podía desestimarse la querella contra Ten General Contractors.

El referido foro apelativo resolvió, en cuanto a la reclamación contra Ten General Contractors, que el acuerdo de transacción firmado por las partes había dado por terminado su reclamación contra ésta en cuanto a los defectos de construcción y su respectiva indemnización en daños; razón por la cual confirmó al DACO en este aspecto. Sin embargo, en cuanto a las reclamaciones contra las otras dos entidades querelladas, el foro apelativo resolvió que según el Reglamento Núm. 2268, Reglamento del DACO para Regular las Distintas Actividades que se llevan a cabo en el Negocio de la Construcción, este organismo tenía jurisdicción para atender querellas relacionadas a prácticas indeseables, como lo eran el alterar o modificar planos, especificaciones o permisos de construcción, o construcciones en forma incompleta o crasamente negligente, como había ocurrido en este caso. Señaló el referido foro judicial, que era al DACO a quien correspondía indemnizar por los daños ocasionados como consecuencia de prácticas indeseables en el negocio de la construcción. Por consiguiente, el foro apelativo intermedio ordenó la

celebración de una vista administrativa ante el DACO para dilucidar la cuantía de los daños sufridos por la querellante a causa de la actuación negligente por parte de los querellados.

Insatisfecha con el dictamen del foro apelativo intermedio, Las Haciendas S.E. acudió, mediante recurso de *certiorari*, ante este Tribunal. Guirimar Construction Corp. Presentó, también, un recurso de *certiorari*. En ambos se hacen los mismos señalamientos de error, a saber: primero, le imputan al foro apelativo haber errado al actuar de forma inconsistente con su dictamen previo del 6 de noviembre de 2001, en el que se expresaba que el organismo administrativo con jurisdicción sobre las alegadas violaciones a la cabida de la propiedad era ARPE, lo cual establecía la ley del caso; segundo, que erró el foro apelativo intermedio al resolver que el DACO tenía jurisdicción para atender la controversia; y en tercer lugar, al adjudicar la controversia en sus méritos a favor de Félix Taveras sin que se hubiese completado el desfile de prueba ante el foro administrativo, y cuando lo que tenía ante su consideración era únicamente una revisión de una resolución desestimatoria y no una adjudicación en los méritos de la controversia, todo ello en violación del debido proceso de ley de las peticionarias.

Examinados ambos recursos y sus apéndices, <u>expedimos</u> y <u>consolidamos</u> los mismos. Estando en condiciones de resolver los recursos radicados, procedemos a así hacerlo.

I

En primer lugar, discutimos y resolvemos los planteamientos hechos por las peticionarias Las Haciendas, S.E. y Guirimar Construction Corp, en cuanto a que la resolución del Tribunal de Apelaciones, del 6 de noviembre de 2001, constituía la "ley del caso".[9] Las peticionarias entienden que una expresión accesoria del foro apelativo dentro de esta resolución[10], sobre la alegada jurisdicción de ARPE, impedía que otro panel de ese foro apelativo

_____

[9] A continuación se transcribe, en esencia, la resolución emitida por el foro apelativo el 6 de noviembre de 2001:

> No puede perderse de vista que el único asunto que permite la clara jurisdicción de D.A.C.O., esto es, los alegados defectos de construcción fue desistido el 26 de octubre de 2001 y que los relacionado a los reclamos sobre cabida, distancias y plot plans aparenta estar bajo investigación ante la Administración de Reglamentos y Permisos, que sin lugar a dudas es la agencia con jurisdicción para ese asunto.
>
> Sin embargo, la resolución en reconsideración emitida [por el DACO] y notificada a todas las partes el 9 de julio de 2001 aparenta haber revivido todos los asuntos del caso. Nótese que esta última determinación no fue recurrida por la peticionaria Las Haciendas S.E.
>
> Así las cosas y estando pendiente todo el asunto ante el foro administrativo, lo prudente es que se plasme la decisión final escrita para que de entenderlo prudente, alguna parte afectada recurra oportunamente ante nos.
>
> Reiteramos que nuestra actuación en este momento sería a destiempo y por ello no podemos acceder a la reconsideración parcial solicitada. (Énfasis nuestro).

[10] En la que se denegó la revisión de la resolución que denegaba la expedición del mandamus solicitado por Las Haciendas.

realizara una determinación contraria. <u>No</u> les asiste la razón.

De entrada, es menester señalar que en reiteradas ocasiones este Tribunal ha expresado que sólo los derechos y obligaciones <u>adjudicados</u> en el ámbito judicial, <u>mediante dictamen firme</u>, pueden constituir la ley del caso. <u>Mgmt. Adm. Servs, Corp.</u> v. <u>E.L.A.</u> 152 D.P.R. 599 (2000), 606-607; <u>In re Tormos Blandino</u>, 135 D.P.R. 573, 578 (1994), <u>U.S.I. Properties, Inc.</u> v. <u>Registrador</u>, 124 D.P.R. 448 (1989). Dicho de otra forma, de ordinario los planteamientos que han sido objeto de adjudicación por el foro de instancia y/o por este Tribunal no pueden reexaminarse. <u>Mgmt. Adm. Servs, Corp.</u> v. <u>E.L.A.</u>, ante, a la pág. 607.

Así como no puede invocarse la doctrina de cosa juzgada cuando no existe una decisión final <u>en los méritos</u> que sirva de base a dicha defensa[11], tampoco es aplicable en tales instancias la doctrina de la "ley del caso". En específico, las determinaciones de un tribunal apelativo constituyen la ley del caso en todas aquellas cuestiones <u>consideradas y decididas</u>. Dichas determinaciones, como regla general, obligan tanto al tribunal de instancia como al que las dictó si el caso vuelve ante su consideración. <u>Secretario del Trabajo</u> v. <u>Tribunal Superior</u>, 95 D.P.R. 136 (1967).

---

[11] Art. 1204 del Código Civil, 31 L.P.R.A. sec. 3343; <u>García</u> v. <u>Gobierno de la Capital</u>, 72 D.P.R. 138, 150-151 (1951); Restatement, Judgments, Secs. 41, 45 (1942), citado en <u>Developments in the Law--Res Judicata</u>, 65 Harv. L. Rev. 818, 835 et seq. (1952).

Ello no obstante --y en situaciones excepcionales-- si el caso, mediante los mecanismos apropiados, vuelve ante la consideración del tribunal apelativo y éste entiende que sus determinaciones previas son erróneas y pueden causar grave injusticia, dicho foro puede aplicar una norma de derecho distinta y resolver así de forma justa. Piazza Velez v. Isla del Río, Inc., 2003 T.S.P.R. 7. Véase además, Pueblo v. Lebrón Lebrón, 121 D.P.R. 154, 159 (1998); Don Quixote Hotel v. Tribunal Superior, 100 D.P.R. 19, 29-30 (1971).

En el presente caso, las expresiones del tribunal apelativo antes transcritas se dieron dentro de una resolución donde el asunto medular era la denegatoria a una solicitud de reconsideración de una resolución anterior. Según se desprende del expediente del presente recurso, la resolución de la cual se solicitaba la reconsideración denegaba, a su vez, la expedición de un auto de mandamus donde se solicitaba se obligase al juez administrativo del DACO a atender los planteamientos hechos por las querelladas sobre la alegada falta de jurisdicción de dicha agencia para atender la controversia ante sí. En esta primera resolución --denegando expedir el recurso de mandamus-- no se hizo determinación alguna en cuanto al asunto de qué organismo administrativo tenía jurisdicción para atender el asunto, si DACO o ARPE. En la resolución del 6 de noviembre de 2001 --la cual las recurrentes sostienen es la ley del caso-- tampoco se hizo una

adjudicación en los méritos sobre el asunto de jurisdicción. Es más, en <u>ambas</u> resoluciones el foro apelativo se negó a intervenir en esa etapa de los procedimientos por considerarla a destiempo.

Es por ello que no podemos suscribir la posición de las peticionarias a los efectos de que las meras expresiones que hiciera el foro apelativo en la resolución denegatoria de la moción de reconsideración presentada por las querelladas constituyeran la ley del caso. Dichas expresiones no alcanzan el grado de dictámenes finales. En esa resolución nada se adjudicó, ni se resolvió la controversia en cuanto al asunto de la jurisdicción ya que ése no era el asunto que tenía ante sí el foro apelativo.

En consecuencia, el foro apelativo intermedio no estaba impedido de hacer la determinación que hizo en la resolución aquí recurrida indicando que el DACO sí tenía jurisdicción sobre el asunto de las alegadas prácticas indeseables en el negocio de la construcción.

II

Las peticionarias cuestionan si el DACO es el organismo administrativo con jurisdicción sobre el asunto. <u>Contestamos dicha interrogante en la afirmativa</u>. Veamos.

La Ley Núm. 130 del 13 de junio de 1967, conocida como la Ley de la Oficina del Oficial de Construcción, 17 L.P.R.A. sec. 501 et seq., le confirió poder a este funcionario para, entre otras, investigar y adjudicar las querellas sobre <u>prácticas indeseables</u> en el negocio de la

construcción, y conceder los remedios pertinentes conforme a derecho. Artículo 4 de la Ley Núm. 130, 17 L.P.R.A. sec. 504. Con la creación del Departamento de Asuntos del Consumidor, y su ley orgánica, la Ley Núm. 5 de 23 de abril de 1976, 3 L.P.R.A. sec. 341 et seq., <u>se transfirieron a esta agencia todos los poderes y deberes de la Oficina del Oficial de la Construcción</u>. Véase, <u>Quiñones</u> v. <u>San Rafael Estates, S.E.</u>, 143 D.P.R. 756 (1997).

Las prácticas indeseables en el negocio de la construcción se encuentran enumeradas en el Artículo 9 de la Ley Núm. 130, 17 L.P.R.A. sec. 509. En lo pertinente, los Incisos (c) y (d) de la referida disposición estatutaria establecen que incurrirá en práctica indeseable en el negocio de la construcción, todo urbanizador o constructor[12] que:

> (c) <u>Altere o modifique los planos</u> de una vivienda o modelo <u>aprobado</u> por la Junta de Planificación <u>y/o la Administración de Reglamentos y Permisos</u> disponiéndose que toda solicitud de enmienda a los planos o especificaciones del proyecto radicada ante la Junta de Planificación y/o la Administración de Reglamentos y Permisos ........

---

[12] El Artículo 1 de la Ley Núm. 130, define urbanizador o constructor como toda persona que se dedique al negocio de la construcción en calidad de empresario o principal responsable de la promoción, diseño, venta, construcción de obras de urbanización para vivienda, o de la construcción en grande escala de viviendas, bien del tipo individual o multipisos. Incluye a quien asuma la responsabilidad total para la presentación ante la Junta de Planificación de consultas de ubicación y uso de de terrenos, y ante la Administración de Reglamentos y Permisos del desarrollo preliminar, planos preliminares, y finales para la construcción de las obras en un predio extenso de terreno que habrá de notificarse para la construcción de viviendas, o que comisione a otros para realizar cualesquiera de tales actividades.

(d) Certifique o haga certificar falsamente que una vivienda o grupo de viviendas, urbanización o proyecto multifamiliar ha sido construido con arreglo a los planos aprobados por la Junta de Planificación o la Administración de Reglamentos y Permisos . . . (Énfasis nuestro) (citas omitidas).

La Ley Núm. 160 del 9 de junio de 1976 fue aprobada para enmendar algunos artículos de la Ley Núm. 130 antes citada.[13] En la exposición de motivos de la referida pieza legislativa se expresa que toda vez que las facultades del Oficial de Construcción han sido transferidas al Secretario del Departamento de Asuntos del Consumidor será necesaria la adjudicación de las querellas sobre prácticas indeseables en el negocio de la construcción presentadas por los consumidores puertorriqueños según se dispone en la Ley Núm. 5, ante, ley habilitadora de DACO, para los demás procedimientos adjudicativos llevados a cabo ante dicho organismo.

A su vez, el Reglamento para Regular las Distintas Actividades que se llevan a cabo en el Negocio de la Construcción, Reglamento Núm. 2268 aprobado por el DACO, del 16 de septiembre de 1977, en la Sección 2(8), faculta al Secretario de dicha agencia a investigar y adjudicar las querellas radicadas sobre prácticas indeseables en el negocio de la construcción. El referido Reglamento establece, además, cuáles serán las referidas prácticas

---

[13] Dichas enmiendas no alteraron los incisos de prácticas indeseables antes transcritos.

indeseables. Entre ellas, se incluyen, en los Incisos (c) y (d) las mismas circunstancias expresadas en los Incisos (c) y (d) de la Ley Núm. 130, ante. Dicho de otra forma, constituirá una práctica indeseable --según el propio Reglamento del DACO-- cualquier alteración o modificación a los planos de una vivienda que hayan sido aprobados por ARPE y que no esté autorizada por el comprador. También constituirá práctica indeseable el que un urbanizador o constructor certifique falsamente que una vivienda ha sido construida de acuerdo a los planos aprobados por ARPE.

Por su parte, la Sección 20 del referido Reglamento, ante, dispone que toda querella a que tenga derecho un consumidor bajo el mismo podrá ser radicada en el Departamento, o su sucesor, y que en dicha querella el optante o comprador podrá alegar que el urbanizador o constructor ha incurrido en una práctica indeseable de la construcción en violación de alguna de las disposiciones de la Ley Núm. 5, ante o del Reglamento de DACO. De modo que el Reglamento dirige al consumidor a radicar su querella, por violación al mismo, y en específico, por prácticas indeseables, ante el DACO.

Como parte de los amplios poderes que tiene DACO para proteger los derechos de los consumidores se encuentra, en específico, la protección de éstos contra prácticas indeseables de la construcción por parte de los constructores y urbanizadores y la concesión de los remedios que en derecho procedan. Quiñones v. San Rafael

Estates, S.E., ante. Al esta agencia ejercer esa facultad, adelanta los intereses de su ley habilitadora, que se sintetiza en el deseo de proteger a los consumidores de prácticas indeseables por parte de los constructores y de proveer un remedio rápido, efectivo y sencillo, sin tener que recurrir a los tribunales y sufragar los costos de un litigio contra una parte que, como regla general, tiene más recursos. *Ibid.*

En consecuencia, resolvemos que, en virtud de las leyes antes citadas y del Reglamento Núm. 2268 de DACO, ante, esta agencia tiene, en efecto, jurisdicción para atender, adjudicar y otorgar los remedios que en derecho procedan en virtud de las querellas presentadas por los consumidores en las que se aleguen prácticas indeseables realizadas en el negocio de la construcción, tal y como lo hizo la querellante en el presente caso. Las alegaciones de Félix Taveras contra Las Haciendas, como vendedora de la vivienda en cuestión, y contra Guirimar Construction, como constructora de las calles de la Urbanización, fueron que, al esta última apartarse de los planos aprobados e inscritos en ARPE, la cabida real de su vivienda es distinta de la que reflejan los referidos planos, constituyendo esto una práctica indeseable en el negocio de la construcción.

En fin, el presente caso trata de una acción en daños y perjuicios de un consumidor y es precisamente DACO la agencia cuyo propósito principal es vindicar e implementar

los derechos de los consumidores [14], a través del procedimiento de adjudicación administrativa y la concesión de los remedios apropiados.[15] Por consiguiente, es correcta la determinación del tribunal apelativo a estos efectos.

III

Por último, las recurrentes señalan como error que el Tribunal de Apelaciones hubiese hecho una adjudicación del caso en sus méritos, devolviendo el caso al foro administrativo para la imposición de daños, cuando lo único que tenía ante sí dicho foro era la controversia en cuanto a qué agencia tenía jurisdicción sobre el asunto y cuando al momento en que se emitió la resolución del tribunal apelativo, las querelladas aun no habían presentado su prueba ante el DACO, violándose de este modo su derecho a un debido proceso de ley. Les asiste la razón. Veamos.

La Sec. 3.1 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2151, establece que cuando por disposición de una ley, regla o reglamento una agencia deba

---

[14] Artículo 3 de la Ley Núm. 5, ante, 3 L.P.R.A. sec. 341b.

[15] Aun cuando ARPE ciertamente tiene jurisdicción para atender las controversias surgidas a raíz de una violación su Ley Orgánica, Ley Núm. 76 del 1 de julio de 1975, 23 L.P.R.A. secs. 71 et seq., o Reglamento, dicha agencia no puede conceder daños a la persona afectada por dichas violaciones. El Administrador de ARPE o su representante autorizado podrá imponer multas administrativas a personas naturales, o jurídicas, que violen o incumplan cualquier restricción, reglamento u orden adoptada en virtud de las facultades que le confieren la Ley Núm. 76, ante, u otras leyes, o que violen cualquier disposición de la Ley Núm. 76, ante.

adjudicar formalmente una controversia, los procedimientos deberán salvaguardar los siguientes derechos:

(A) Derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte.
(B) Derecho a presentar evidencia.
(C) Derecho a una adjudicación imparcial.
(D) Derecho a que la decisión sea basada en el expediente

Una parte en un procedimiento formal de adjudicación a nivel administrativo puede presentar evidencia tanto oral como documental en apoyo de sus contenciones. Al ser la audiencia concedida por las agencias una de carácter evidenciario se sigue la trayectoria judicial de que cada parte presente su caso a través de testimonio oral, evidencia documental y argumentos legales. El derecho a la audiencia incluye el de presentar evidencia. Un procedimiento que no permite la presentación de prueba para demostrar la falta de responsabilidad es uno que no cumple con los requisitos del debido procedimiento de ley y constituye una mera formalidad. Demetrio Fernández Quiñónez, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, p. 158, 2da ed., Ed. Forum, 2001, citando a Morgan v. United States, 304 U.S. 1 (1938) y a Ortiz v. Junta Hípica, 101 D.P.R. 791 (1973).

En el presente caso, el Tribunal de Apelaciones devolvió el caso únicamente para la imposición de daños por la negligencia de las querelladas. Al así actuar éste hizo una adjudicación del caso en sus méritos, sin tomar en consideración la etapa de los procedimientos ante el foro

administrativo, ya que ante la agencia administrativa no se había comenzado el desfile de la prueba de las querelladas. <u>Erró al así hacerlo</u>.

El DACO <u>desestimó</u> la querella a base de dos fundamentos: la transacción del caso que ponía fin al pleito entre Ten General Contractors y la querellante; y el hecho de que el remanente del pleito era de la jurisdicción de ARPE y no del DACO. Como vemos, <u>el DACO no hizo determinación alguna sobre la alegada negligencia de las querelladas</u>. Además, al momento de emitir esta determinación, únicamente la querellante había presentado su prueba. En vista de que la querella fue archivada, en virtud de los planteamientos hechos por Las Haciendas y Guirimar Construction sobre la falta de jurisdicción del DACO, éstas aun no habían presentado su prueba.

En consecuencia, resolvemos que <u>erró</u> el foro apelativo intermedio al ordenar la devolución del caso únicamente para la imposición de daños. Lo <u>procesalmente correcto</u> es devolver el caso al DACO para que, luego de que las querelladas hayan desfilado su prueba, <u>dicho foro administrativo haga una determinación del caso en los méritos</u>.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Olga I. Félix Taveras

    Recurrida

       vs.                   CC-2004-1019       CERTIORARI

Las Haciendas, S.E.; Ten      Cons. CC-2004-1097
General Contractors, S.E.;
Guirimar Construction, Corp.

    Peticionaria la
    primera

SENTENCIA

San Juan, Puerto Rico, a 19 de octubre de 2005

        Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la determinación del Tribunal de Apelaciones a los efectos de que el DACO tiene jurisdicción sobre la querella presentada en el presente caso por Olga I. Félix Taveras. Se revoca, sin embargo, la decisión del foro apelativo intermedio de devolver el caso al DACO únicamente para la imposición de daños. Se devuelve el caso a la referida agencia administrativa para que ésta resuelva el caso en los méritos.

        Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Fiol Matta no intervino.

                       Aida Ileana Oquendo Graulau
                       Secretaria del Tribunal Surpemo